AGNES LINNEMANN, Guardian, Appellee, v. GUSTA KIRCHNER, Executrix, Appellant.

PARTIES: Real Party in Interest. One in whose name a contract is made for the benefit of another, or the beneficiary of such contract, may be a party plaintiff to enforce the contract.

LIMITATION OF ACTIONS: Unwritten Continuing and Unexecuted Contract. An action to recover sums of money, under a continuing and unexecuted contract for the support of plaintiff's wards, is not barred, though brought more than five years after the expenditures were made.

**FRAUDS, STATUTE OF:** Party's Direct Obligation. A contract directly binding the obligor for the support and education of the wards of another is not within the statute of frauds.

**PLEADING:** Pleading Conclusion. An allegation that "the contract alleged \* \* \* is so vague \* \* \* that it cannot be enforced, and (defendant) denies that said contract has any validity," is a pure conclusion, and properly stricken on motion.

**ELECTION OF REMEDIES:** Single Contract. The doctrine of election of remedies has no application to an action wherein plaintiff rests his right of recovery on a *single* contract, even though his testimony is conflicting as to when and where the contract was made.

**APPEAL AND ERROR:** Indefinite Brief Point. A brief point which asserts "that the court erred" in a certain ruling, and then, in substance, directs the court to wander through the reporter's notes to find the *reasons* for such error, will be given no consideration.

**TRIAL:** Instructions—Correct But Not Explicit. A correct instruction, but one not just as explicit and all-embracing as counsel would like to have it, is sufficient, in the absence of a request for amplification.

**APPEAL AND ERROR:** ''Moot'' Questions. Remanding a cause for complete retrial *may* render an assignment of error wholly moot. So held where the assignment was (1) excessive verdict, (2) verdict contrary to charge, (3) improperly permitting the belated filing of a claim, and (4) refusal of a continuance.

**EVIDENCE:** Conclusion. It is objectionable to permit a witness, after reciting what was said, to interject the statement, "He as much as said that, you know."

**TRIAL:** Order of Evidence. One may be permitted to show the amount of his expenditures for which recovery is sought, *before* proving the contract giving right to recover therefor.

**EVIDENCE:** Hearsay. Testimony that a third party "consented" to a contract is not hearsay when plaintiff's claim is that the making of such contract was conditional on the consent of such third party.

**TRIAL:** Examination—Question Not Revealing Purpose. One may not complain of the exclusion of a question which does not re-

veal what was sought to be proven, and counsel makes no statement of what he expects to prove.

**WITNESSES:** Transaction with Deceased. The *interest* which will exclude a witness from testifying to a transaction with a deceased must be *direct* and *immediate*.

**WITNESSES:** Transaction with Deceased—Disqualifying ''Interest.'' A guardian who, under a claim that decedent obligated himself to pay for the care of the guardian's wards, prays for an allowance *for the wards* from decedent's estate is, irrespective of her position as a plaintiff, incompetent to testify to the terms of the contract with decedent, *or to any essential fact dependent on the contract* when it appears that, if the prayer be granted, a fund will be created from which the guardian will be personally reimbursed for large outlays made for her wards.

**VERDICT:** Motion for Direction—Waiver and Effect. A defendant who unsuccessfully moves for directed verdict at the close of plaintiff's evidence, and does not renew the motion at the close of *all* the evidence, waives error in the ruling; yet he may, in motion for new trial, continue to insist that the evidence is insufficient to support the verdict.

*Appeal from Muscatine District Court.*—F. D. LETTS, Judge.

JULY 6, 1920.

APPELLEE has verdict and judgment against the said estate, on a claim that C. B. Kirchner, in his lifetime, made verbal contract to pay for the support and education of the said wards of appellee. Hence this appeal.—*Reversed and remanded.*

*F. W. & Louise Eversmeyer* and *J. F. Devitt,* for appellant.

*Hoffman & Hoffman* and *Dawley, Jordan & Dawley,* for appellee.

SALINGER, J.—I. There are 92 ''errors relied on for reversal,'' and 61 brief points. The two fill 56 pages of print.

The argument of the appellant upon these covers 118 pages; the reply brief, 31 pages. This is not said by way of criticism. We have no desire to interfere arbitrarily with the conception that counsel have of their duty to their client, nor with their method of presentation. It is said to explain why it is impossible, within the reasonable limits of an opinion, to go into a detailed consideration of all the points raised,—said to justify our limiting consideration to what seems to us to be of outstanding importance, and to matters that may require consideration on another trial.

II. Appellant says that plaintiff does not assert the alleged contract was made with her as guardian; that she pleads it was made with her as an individual; and that she has made no assignment to the guardian. Upon this, it is urged that plaintiff is not the real party in interest. We hold the point is not well made, if for no other reason than that either the maker or the beneficiary of a contract made by one for the benefit of the other has standing to sue on such contract.

1. PARTIES:
real party
in interest.

III. The claim of appellee is that one Kirchner, now deceased, orally agreed to support and educate the minor wards of appellee. We hold that such claim is not barred by Subdivision 6 of Section 3447 of the Code. If the contract alleged was made, it is not yet completed by either party to it. The children are still to be cared for. Money is still to be expended. Appellee could have deferred the beginning of action until the contract had been entirely performed. It is, therefore, manifest that, though she asked for an allowance to carry out the contract completely, and did so more than five years after the contract was made, the statute does not bar her. The alleged promise is not within the statute of frauds. Therefore, the court rightly struck out of the pleadings the conclusion that the contract relied on "would be invalid for the reason that

2. LIMITATION
OF ACTIONS:
unwritten
and unexe-
cuted con-
tract.

3. FRAUDS,
STATUTE OF:
party's
direct
obligation.

parol evidence is incompetent to establish such contract as the guardian attempts to set up." The citations of appellant are cases of a naked promise to meet the obligation of another. If the contract alleged here was made, the promisor did not undertake to discharge the obligation of another, but to induce Agnes Linnemann to expend time and money on the request of the promisor.

IV. There is a complaint asserting that the court erroneously struck out Paragraphs 5, 6, 8, and 10 of the answer of defendant. Paragraph 5 asserts the statute of frauds, and its striking off has been disposed of. Paragraphs 6, 8, and 10 were not stricken at all.

V. Paragraph 3 of the answer had an allegation that "the contract alleged by plaintiff is so vague and indefinite that it could not be enforced, and denies that said contract has any validity whatever." This was rightly stricken, for being a mere conclusion of law.

4. PLEADING: pleading conclusion.

VI. No occasion for ordering an election arises where but a single contract is relied on, even if those who speak to its creation differ as to when and where it was made.

5. ELECTION OF REMEDIES: single contract.

VII. One brief point charges error, "for the reason that the court erred in admitting testimony on behalf of claimant over the objection of the executrix, as shown by the shorthand notes of the reporter, taken on said hearing, and in support thereof appellant cites and relies upon the facts and authorities stated in Points 3, 5, 6, 7, 10, 11, 12, 13, and 14 hereof." Another complaint is the court should have sustained that part of the motion for new trial which charged that "the court erred in sustaining objection to testimony offered in behalf of the executrix, as shown by the official report of the shorthand reporter, taken upon the said trial, and in support thereof they cite and rely upon the facts and authorities set out in Points 23, 24, 25, and 26 hereof." Another brief point is, "The court

6. APPEAL AND ERROR: indefinite brief point.

erred in giving the eighth instruction on its own motion to the jury," and that there was like error as to the ninth instruction and the tenth. We have settled that these are too broad and vague to obtain appellate review.

VIII. As to Instructions 4 and 9, no exception was taken. No complaint now made of Instructions 3, 6, 7, 10, and 11 was raised by any exception to the charge. The charge terminated liability on attainment of majority, but failed to say that liability would be terminated by the death of either or both of the children before majority. Appellant complains because such a limitation was not added. The charge was right, as far as it went. The failure to add what should be done if there was a death during minority constitutes a mere paucity, and, as no instruction was offered on the point, that paucity may not now be made the ground for reversal.

7. TRIAL: instructions: correct but not explicit.

IX. The opening statement of counsel for appellee is complained of on the ground that it was an argument on the merits. We have examined the argument set out in the abstract with care, and see nothing in it that makes the permitting it an abuse of discretion. Nor do we feel at liberty to interfere with the discretion the court had, by holding that, as matter of law, the argument went beyond a reasonable and fair statement of what counsel construed that evidence to be which he expected to adduce. In so far as it can be claimed statements made in this opening argument were mere conclusions, there is nothing to consider here, because, as to these, the court sustained objections.

Moreover, it is settled in this jurisdiction that, where there is a reversal on other grounds, the question of misconduct of counsel is a moot one. *Davis v. Hansen,* 187 Iowa 583.

Other complaints raise questions that have become moot. It is said that the verdict is contrary to the charge of the court, and that the verdict is excessive. It may not offend

8. APPEAL AND
   ERROR:
   "moot"
   questions.

in either respect on retrial, even if we assumed it did so now. As to the matter of permitting the claimant to file an alleged new claim after she had largely concluded her evidence and was about to rest her case, and the overruling of motion for continuance on that account, these court actions are very largely discretionary. And they have become moot, because, on the new trial, it will be immaterial that a continuance was refused; and the filing of the alleged new claim will have been made far in advance of the trial.

X. A witness was asked what the decedent said, if anything, "about furnishing money." Objection was made that this called for an objectionable statement and conclusion of the witness, and the objection overruled.

9. EVIDENCE:
   conclusion.

There was testimony that the decedent said, "Well, he wanted them educated, he wanted them kept together and raised right," and that decedent was anxious for Mrs. Linnemann to take the children, and that she had responded she didn't know how she could take them; that decedent wanted the children to be kept together, where he could visit them; that he would see Mrs. Linnemann was paid for it; that he would furnish the keeping, and that "he as much as said that, you know." This, also, was objected to for being an objectionable opinion, statement, and conclusion; and the objection overruled. In these rulings, we find no reversible error, but suggest that, on retrial, the witness be not permitted to say, "He as much as said that, you know."

XI. Testimony as to what had reasonably been expended in the maintenance and schooling of these children was rightly admitted. Appellee could not make her case by any one piece of testimony. In the event of her succeeding in showing that the alleged contract was made, the testimony as to the reasonableness of these expenditures would bear on the amount of allowance that should be

10. TRIAL:
    order of
    evidence.

made. Of course, such testimony avails the claimant nothing, if it shall transpire that she has failed to prove the existence of the alleged contract.

As to the evidence received on what was customary schooling, appellant urges that it should not have been received, because there was no showing as to the surroundings of the parties, nor as to the education or social standing of C. B. Kirchner, throwing light on what he meant by education, if he ever used such a term. No matter what he may have meant by the term, it was still competent to show what it would reasonably cost to educate these children.

XII. There was testimony that, when decedent made the proposal for the care of the children, Mrs. Linnemann said she would have to consult with her husband about it. She was questioned as to whether her husband had agreed that she might keep the children. Objection was made that this called for hearsay, and asked for the conclusion and opinion of the witness. The answer was that the husband felt like the witness did; that they were not prepared to take on any additional expense at that time; but that, when she told him the agreement she had made with decedent, the husband consented, under those conditions, to take the children. A motion to strike urged that this answer was an objectionable conclusion. All these objections were overruled, and we think rightly so. It was all part of an attempt to prove that a contract had been made. On the evidence of the appellee, the making of the contract depended upon the consent of the husband. On that theory, it was proper for her to state that the husband had consented to the making of the contract, and so saying was neither hearsay nor an objectionable conclusion. It was, in effect, a way of testifying that a contract had been completed.

11. EVIDENCE: hearsay.

XIII. Barney Kirchner was asked this question:

"You may state whether or not, on Sunday afternoon, prior to the death of your daughter, in February, 1910, you

had a talk with her in which she told you—"

This was objected to on the ground that things were put into the question which the daughter may have told the witness; that it was leading; and that it was an attempt to get evidence before the jury which would be inadmissible if asked as a question. It was sustained, and that ruling is complained of.

12. TRIAL: examination: question not revealing purpose.

The argument assumes that the ruling., excluded a declaration by the decedent, and that such declarations were competent to rebut the claim of the plaintiff. There was no profert, and we do not feel warranted to assume what appellant does.

XIV. Appellant concedes the record does not show decedent knew the children were at Cedar Rapids, but urges that appellee claims the reason that decedent wanted her to take the children was that they should be kept together where he could visit them. Upon this, it is assigned as error that the court excluded testimony that decedent never visited the children at Cedar Rapids. We would not reverse on the point, but suggest that such testimony might well be admitted.

XV. One A. M. Parmeter was objected to, under the prohibition of Code Section 4604. The theory of the objection was that, as grandfather, he might sometime be made liable to support these children, under Section 2217 of the Code of 1897. We hold this objection was rightly overruled, because the liability created by that statute did not make the witness directly and immediately interested, within the provisions of Section 4604.

13. WITNESSES: transaction with deceased.

XVI. The suit is brought by Agnes Linnemann, guardian. Over apt objection, she was permitted to give testimony which tended to establish the contract alleged by her in the claim filed by her. She argues that the reception of said testimony did not violate some of the provisions of Code Section 4604. If that be granted, yet it is of no

14. WITNESSES: transaction with deceased: disqualifying "interest."

avail, if other provisions of that statute do condemn the receiving of her testimony. One of the prohibitions of that statute is that, in such a transaction as this proceeding, no one may testify, if he be a "person interested in the event" of the proceeding. Was this witness thus interested? The claim filed alleged that she entered into oral contract with one C. B. Kirchner, now deceased, by the terms of which Kirchner was to pay for the keeping and education of the children, Bernard and Gladys Parmeter, for whom Agnes Linnemann is acting as guardian. In fair effect, it is further pleaded that, by the terms of this contract, this witness was to take these children in charge, was to keep and care for them, and to supervise their education. There is a further plea that the guardian has already expended large sums of money for that education and for their necessities, and has done so out of means that she has earned, and others which have been given to her by her husband; and it is further averred that a large sum is justly due for the board and keeping and care of these children for a term of years. The guardian introduced receipts, showing payments she had made for the education of these children, and it was put before the court that there had been other expenditures made by her in their behalf, for medical attendance, clothing, and the like. The defense of the ruling receiving the testimony concerning the contract made between Linnemann and Kirchner is indicated in a statement by counsel in open court. It declared that the claimant was not suing for money for herself, but for an allowance to be made to her wards, and that the only purpose of offering these evidences of her expenditures was "to show how much it has been costing these children to live, not with the idea of recovering for it, but to show how much really Mr. Kirchner had agreed to pay out." We are not prepared to hold that, because this guardian was not asking a judgment for herself, for expenditures made by her under the alleged contract, that, therefore, she does not have an immediate and direct interest in establish-

ing the existence of that contract. We feel clear a witness may be so interested as to be disqualified to speak to certain subjects, though he seeks no recovery in the very suit in which he is thus testifying. Witnesses have been held disqualified for interest, though they made disclaimer of the right to recover. That was the holding in *Ivers v. Ivers,* 61 Iowa 721, at 723. There, plaintiff, as administrator of the estate of Martha Ivers, brought action to recover of defendant the value of certain property which, it was alleged, belonged to the estate of decedent, and as to which it was claimed that defendant took possession of and appropriated the same. One Ann Johnson, daughter of the decedent Martha, was inquired of respecting certain personal communications between the witness and deceased. It will be noticed that this heir could get no judgment in that case, but that, if the action went against the defendant, she would have a right to claim a share of the judgment, based upon misappropriation of property of the estate. It was held her testimony was rightly rejected, although she filed a disclaimer in which she "disclaims all interest in this action, or the result thereof, and all and every interest in the personal estate of Martha Ivers, deceased." The holding in this court was based on the statement that "the disclaimer of the witness did not operate as a release of her interest." Surely, a statement by counsel that the testimony of Agnes Linnemann was not offered with the idea of recovering for her what it had cost the children to live, was not a relinquishment of her right to be paid for what she had expended in their behalf, should an allowance be made to pay for the maintenance of the children because the court found that Kirchner had made a contract to pay therefor.

True, we have held that the interest which disqualifies the witness must be legal, certain, and immediate (*Birge v. Rhinehart,* 36 Iowa 369) ; and that the witness must be interested in the sense that he will either gain or lose by the direct, legal operation and effect of the judgment, or in the sense that the record will be legal evidence for or

against him in some other action (*Wormley v. Hamburg,*
40 Iowa 22). The same rule prevails as to the interest
required to permit intervention. *Reard v. Freiden,* 184
Iowa 823. The suit involved whether a promissory note,
given for bank stock purchased, should be surrendered by
an insolvent bank, and whether plaintiff's status as a stock-
holder should be canceled, so that, in addition to receiving
back his note, he would be released from obligation to
contribute as a stockholder. We held the creditors of
that bank had the right to intervene. Our argument was
that, if plaintiff prevailed, it would diminish what the
interveners could collect, and that, therefore, they had the
direct and immediate interest required, even on the test
whether they would gain or lose by the direct, legal effect
and operation of the judgment. We are unable to dis-
tinguish this case from that of *Freiden,* in principle. It
is as certain as that there will be seed time and harvest
that, if this suit fails because the alleged contract is
found not to be established, this witness will lose thou-
sands of dollars; that, on the other hand, if she succeeds
in proving the alleged contract, she will obtain a fund
out of which to satisfy claims she has because she acted
under the contract. Though she asked for no direct al-
lowance to her, she did assert that a certain contract was
made. She testified to what, if believed, proved she had
expended money for things which the contract stipulated
Kirchner should pay for. So, she testified to what gave
her an immediate right to reimbursement, if an allowance
was made to the wards because of the alleged contract.
She testified to how much she had expended under the
terms of the contract. No one has urged that these ex-
penditures were improper. It may not be argued for this
appellee that she testified falsely in saying how much she
had expended. If she fails to establish the contract, she
loses all this expenditure. For it is quite manifest the
little children have nothing wherewith to pay, and, for
that matter, it is doubtful whether they could be held to

be under any obligation to repay. With the contract established, she will be reimbursed for a very large outlay. On failure to establish the contract, she must lose this reimbursement, and obtain nothing for her outlays. It would strain reason to hold that she was not interested in the event of this proceeding—was not directly and immediately interested in whether the contract to which she testified should be adjudged to have been made. Her testimony is within both the letter and spirit of the statute. That statute seeks to protect those who have become unable to utter a denial of testimony that seeks to seize estates they have left behind. The reason of the statute rests on the fear that, without it, there will be a tendency to have testimony against one dead, swayed by self-interest. Both the letter and the spirit of the statute, therefore, exclude this testimony that the alleged contract was entered into. The same excludes testimony to the effect of what acts were done in reliance upon the alleged contract. The keeping of and the expenditure for these children is not binding on the estate of the decedent, unless the contract alleged was made. It follows that, if the witness may not speak to the contract, she may not speak to any essential thing dependent upon the contract, or to anything making recovery thereon possible. It follows she may not speak either to the making of the contract or that certain things done by her were done in reliance upon its terms. What she did gives her no right to recover, unless the contract be proved. Prohibited from testifying to the existence of the contract, all evidence which is effective only where the contract is competently established, is prohibited, as much as testimony that the contract was made. We therefore hold that the court erred in overruling the objections to this testimony.

XVII. A motion to direct verdict, made at the close of the testimony for the plaintiff, urged there was no competent testimony of the existence of the alleged contract.

This motion was overruled, and was not re-

15. VERDICT:
    motion for
    direction:
    waiver and
    effect.

peated; therefore, we cannot review its over-ruling. True, the motion for a new trial repeats that it was error to overrule the motion to direct, but our decisions all agree that nothing is gained by such an exception in motion for new trial. But as well settled is it that failure to repeat the motion to direct does not bar urging in motion for new trial that the verdict returned is not sustained by the evidence. If, then, we must find there is no competent evidence of the alleged contract, so much of the motion for new trial as urges the insufficiency of the evidence must be held to have been well made. As a result of our holding that the testimony of Agnes Linnemann may not be considered, there is no evidence to sustain the·making of the alleged contract, unless the testimony of the witness A. M. Parmeter supports the claim that said contract was made. For one thing, this witness states that what he speaks to occurred at a stated time, and on a described occasion; while the testimony of Agnes claims the contract to have been made at a different time and occasion. But waive that,—does the testimony of Parmeter make a case for the jury? To shorten the discussion, let us concede *pro arguendo,* that this witness testified decedent, C. B. Kirchner, proposed to Agnes Linnemann· just such a contract as she asserts. The trouble is that, though this is granted, the testimony of this witness is merely a corroboration of the testimony of the plaintiff, wherein she makes clear that she refused to accept the proposition, and took it under advisement, and for consultation with her husband. All this witness heard merely demonstrates that the parties did not come together while he was present. It follows his statement that the children were taken to Cedar Rapids is no evidence that they were taken because of an acceptance of Kirchner's proposal, of which acceptance this witness confessedly knows nothing. Mrs. Linnemann alone is able to supply this missing link, and, as we have seen, is not permitted to do so. We are, therefore, constrained to hold, on the

record before us, that so much of the motion for new trial as asserted the verdict to be without support should have been sustained. This speaks to the case as it now stands, while there is no competent evidence that the contract was made. And she may testify on what she did under the contract if its existence be ever competently shown.

XVIII. Possibly appellants are raising the question whether there is not a total failure to prove acceptance. Assuming that the point is properly before us, we prefer not to determine it on this appeal. Having held there is no competent evidence of a contract, we should not now determine finally whether there is no proof of acceptance. It will be time enough to say whether a jury could find that there was no contract because there was no acceptance, when we have competent evidence in the record to show that a contract was even proposed.

XIX. We stop here, because other complaints presenting alleged errors have been made harmless by our final decision, and because other matters are not likely to occur on retrial.

For the matters disposed of in Division XVII and XVIII of this opinion, the cause is—*Reversed and remanded.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.