CHICAGO & NORTHWESTERN RAILWAY COMPANY, plaintiff, v. E. A. KRAMME et al., dba KRAMME & JENSEN CONSTRUCTION COMPANY, defendants.

No. 48254.

(Reported in 59 N.W.2d 204)

June 9, 1953.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellants.

Frank W. Davis and Ray H. Johnson, Jr., both of Des Moines, for appellee.

GARFIELD, J.—Defendants, partners in the contracting business, were engaged in work on a government flood control plan at Council Bluffs in the fall of 1946. They applied for and obtained a license to build a private crossing over the tracks of plaintiff-railway for the purpose of hauling heavy equipment across the tracks. In accordance with the written agreement between plaintiff and defendants, plaintiff assigned one Stewart to protect train and vehicular movements over the crossing. On October 31, 1946, Stewart was seriously injured by a six-wheel dirt mover operated over the crossing by Orr, an employee of defendants engaged in the construction work.

Stewart was immediately taken to a Council Bluffs hospital where he was confined four months. Without defendants' knowledge plaintiff engaged the necessary hospital, nursing and medical care for Stewart of the reasonable value of $2661.62 which plaintiff paid. On December 10, 1946, plaintiff made written demand on defendants for reimbursement for this hospital, nursing and medical expense but defendants declined to reimburse plaintiff therefor.

After plaintiff commenced this action on January 14, 1948, to recover the $2661.62 from defendants, Stewart commenced action against both plaintiff and defendants herein, claiming damages of $150,000 because of his injuries. Both plaintiff (railway) and defendants (construction company) herein filed answers denying liability in the action brought by Stewart. On June 7, 1949, the action by Stewart was compromised and settled by payment on behalf of defendants herein of $20,000 to Stewart and his wife, who executed a release of all claims held by Stewart against plaintiff and defendants herein, and that action was dismissed with prejudice.

The written agreement between plaintiff and defendants under which plaintiff granted defendants a license to construct and use the private crossing provides in part that plaintiff will furnish conductors to be located at points designated by it to protect both train and vehicular movements over the crossing. It also contains this vital paragraph:

"The Licensee [defendants] assumes and agrees to pay for all loss or damage to property and injury to or death of persons, including costs and expenses incident thereto, arising, wholly or in part, from or in connection with the existence, * * * maintenance, * * * use or removal of said facility or any defect therein or failure thereof, causing same or contributing thereto; and the Licensee shall forever indemnify the Railway Company against and save it harmless from all liability for any such loss, damage, injury and death, including all costs and expenses incident thereto."

Plaintiff contends and the trial court held the quoted provisions contain (1) an indemnity agreement following the semicolon and (2) an agreement to pay all costs and expenses incident to any personal injury arising from use of the crossing, and that defendants were liable to plaintiff under the provision last referred to. Defendants contend plaintiff cannot recover for the reason it does not appear plaintiff was legally liable to Stewart for the expense incurred by it and its payment of such expense was voluntary and gratuitous.

The case turns mainly on the proper construction of the quoted language of the agreement. It must be conceded that if it provides merely for indemnity to plaintiff from liability for loss, damage or injury, plaintiff cannot recover because it does not appear it was legally liable for the expense paid by it except as it voluntarily assumed such liability. An agreement for mere indemnity from liability ordinarily covers only legal liability and not liability such as the indemnitee voluntarily assumes. Defendants have cited several authorities that sustain this proposition and plaintiff does not challenge it.

Except for one case where there was no contract for indemnity but the right thereto was based on the relationship between the parties, every precedent cited by defendants under its first and third brief points involves a contract for indemnity only. As above indicated, plaintiff contends the agreement here is more than one for mere indemnity and has cited decisions that measure the rights of the parties by the terms of the particular contract.

The meaning of the quoted language should be gathered

from the whole paragraph. If reasonably possible, effect will be given to all the language. Hubbard v. Marsh, 241 Iowa 163, 166–168, 40 N.W.2d 488, 490, 491; Nylander v. Nylander, 221 Iowa 1358, 1360, 268 N.W. 7, 8; Hipwell v. National Surety Co., 130 Iowa 656, 662, 105 N.W. 318; Laevin v. St. Vincent De Paul Society of Grand Rapids, 323 Mich. 607, 36 N.W.2d 163, 164, 6 A. L. R.2d 815; 12 Am. Jur., Contracts, section 241, pages 772–775; 17 C. J. S., Contracts, section 297, pages 710, 711. A like rule is a cardinal rule of statutory construction.

"Each contract must be ·construed according to its own terms." Duke v. Tyler, 209 Iowa 1345, 1348, 230 N.W. 319.

 The clause which follows the semicolon provides for complete indemnity to plaintiff from the liability therein referred to. If, as defendants contend, the only purpose of the quoted paragraph was to provide for such indemnity to plaintiff, the language at the beginning of the paragraph is useless surplusage. We think it is reasonably possible to give effect to such language.

The agreement states: "The Licensee assumes and agrees to pay for all * * * injury to * * * persons, including * * * expenses incident thereto, arising, wholly or in part, from or in connection with the existence, * * * maintenance, * * * use or removal of said facility * * *." This provides for more than mere indemnity to plaintiff. It is an absolute promise to assume and pay the necessary and reasonable expense plaintiff seeks to collect. Hipwell v. National Surety Co., supra, 130 Iowa 656, 660, 105 N.W. 318, 319.

In the Hipwell case, supra, the agreement provided " 'that the party of the second part further covenants and agrees to promptly pay for all labor and materials used in and about the building, and to hold and save the said first party harmless from and against all and every demand * * *.' " We held "in no plainer language could the contractor have agreed 'to promptly pay for all labor and materials used in and about the building.' "

State v. Cordaro, 214 Iowa 1070, 1075, 241 N.W. 448, 450, states: "A contract to indemnify and save harmless is. quite a different thing from an unqualified and absolute promise to

pay." To the same effect are Wicker v. Hoppock, 6 Wall. (U. S.) 94, 18 L. Ed. 752; 42 C. J. S., Indemnity, section 3. For a case involving an agreement to indemnify and also to assume a contract see Mills v. Allen, 133 U. S. 423, 10 S. Ct. 413, 33 L. Ed. 717.

Although the case is factually not in point we think this language from Hilliard v. Newberry, 153 N. C. 104, 107, 68 S.E. 1056, 1057, is applicable here: "* * * the authorities are to the effect that, when a collateral obligation is in strictness one of indemnity, an action at law will not lie unless and until some actual loss or damage has been suffered, but, when the obligation amounts to a binding agreement to do or refrain from doing some definite, specific thing materially affecting the rights of the parties an action will presently lie for breach of such an agreement, and no damage need be shown. * * * 'Where the promisor has undertaken to do a particular act or make a specific payment as well as to indemnify the promisee, the contract is broken, and a recovery for such breach may be had as soon as the time for doing such act or making such payment has arrived, and the promisor has failed to perform his obligations, and in such case it is no defense that the promisee has not been damnified.' "

See also Wicker v. Hoppock, supra, 6 Wall. (U. S.) 94, 18 L. Ed. 752; In re H. L. Herbert & Co., 2 Cir., N. Y., 262 F. 682, 684; Liberty Mutual Ins. Co. v. Atlantic Coast Line R. Co., 66 Ga. App. 826, 19 S.E.2d 377, 382; 42 C. J. S., Indemnity, section 3, page 566.

The agreement quoted last above seems to have been intended not merely for plaintiff's protection but also for the benefit of persons injured from use of the crossing. There is little doubt that Stewart, had he seen fit, could have recovered these expenses from defendants by virtue of the agreement. Curtis v. Michaelson, 206 Iowa 111, 119, 219 N.W. 49; Haakinson & Beaty Co. v. McPherson, 182 Iowa 476, 477, 166 N.W. 60; Hay v. Hassett, 174 Iowa 601, 605, 156 N.W. 734; Hipwell v. National Surety Co., supra, 130 Iowa 656, 661, 105 N.W. 318; Wells v. Kavanagh, 70 Iowa 519, 30 N.W. 871; Jordan v. Kavanaugh, 63 Iowa 152, 158, 18 N.W. 851 (holding the statutory

rule in effect since the Code of 1851, now stated in rule 3, Rules of Civil Procedure, applies to a bond given a railroad. Curtis v. Michaelson, supra, is a like holding as to a contract given a bus operator.); Fidelity & Deposit Co. v. Rainer, 220 Ala. 262, 125 So. 55, 77 A. L. R. 13, 20, and annotation 21, 56, 65; annotation 81 A. L. R. 1271, 1279; 17 C. J. S., Contracts, section 519c, page 1121; 12 Am. Jur., Contracts, section 277. See also Eggermont v. Central Sur. & Ins. Corp., 236 Iowa 197, 17 N.W.2d 840.

Rule 3, Rules of Civil Procedure, above referred to, provides: "Public bond. When a bond or other instrument given to the state, county, school or other municipal corporation, or to any officer or person, is intended for the security of the public generally, or of particular individuals, action may be brought thereon, in the name of any person intended to be thus secured, who has sustained an injury in consequence of a breach thereof, except when otherwise provided."

Haakinson & Beaty Co. v. McPherson, supra, states (at page 477 of 182 Iowa): "* * * no matter to whom a bond runs, if the contract which it secures contains a provision that certain things shall be done for parties not named in the contract, then a breach of that agreement gives these other parties the right to sue and recover upon the bond."

Here this expense was incident to Stewart's injury from use of the crossing, it was necessary and reasonable, defendants refused to pay it as they had agreed to do. Thus there was a breach of the agreement. Hipwell v. National Surety Co., supra, 130 Iowa 656, 663, 105 N.W. 318.

Not only could Stewart have enforced the agreement had he seen fit, but this plaintiff is entitled to do so. Rule 2, Rules of Civil Procedure, superseding a statute of like effect in force since the Revision of 1860 (section 2758), states: "* * * a party with whom or in whose name a contract is made for another's benefit * * * may sue in his own name without joining the party for whose benefit the action is prosecuted."

Our conclusion that plaintiff is entitled to enforce the claim here asserted finds further support in Turnis v. Ballou, 201 Iowa 468, 472, 205 N.W. 746; Linnemann v. Kirchner, 189

Iowa 336, 339, 178 N.W. 899; Smith v. Continental Ins. Co., 108 Iowa 382, 385, 79 N.W. 126; Ingelson v. Olson, 199 Minn. 422, 272 N.W. 270, 110 A. L. R. 167, 171; 12 Am. Jur., Contracts, section 273; 17 C. J. S., Contracts, section 519c(4), pages 1139, 1140.

█ The basic rule for the construction of all contracts is to ascertain the intention of the parties and give it effect if that can be done consistently with legal principles. Darnall v. Day, 240 Iowa 665, 670, 37 N.W.2d 277, 280, and citations; annotation 175 A. L. R. 8, 29; 42 C. J. S., Indemnity, section 8a; 27 Am. Jur., Indemnity, section 13. We think our decision gives effect to the intention of the parties and does not violate any rule of law.

█ Defendants desired to use property belonging to plaintiff in the performance of their contract with the government. Plaintiff was not compelled to grant defendants a license to construct and use this crossing. So far as shown, it was not paid for doing so. Plaintiff was entitled to impose such conditions as it chose upon granting permission to use its property. There is nothing unreasonable or unjust about the construction we have given the agreement.

█ Defendants suggest in argument that plaintiff is precluded by the language of its petition from contending the agreement is not strictly one of indemnity. The argument is based on the allegation of the petition "That defendants, under the terms of the indemnifying provisions of the license agreement * * * are obligated to repay plaintiff $2661.62."

We cannot accept defendants' suggestion. To do so would be to construe the petition with too much strictness and technicality. The license agreement, copy of which is attached to the petition, fills five pages of the record and covers several matters not referred to herein. The entire paragraph of the agreement heretofore quoted is set out in the petition proper. The petition as a whole does not indicate an intention to rely solely on the provision of the agreement merely for indemnity rather than upon the entire paragraph. The language of the petition on which defendants rely may well have been intended as a reference to the whole paragraph.

The foregoing is deemed a sufficient answer to the sole error upon which defendants rely for reversal. Defendants do not argue they are entitled to a reversal by reason of the release signed by Stewart and wife or the dismissal of the tort action brought by him while the present action was pending.— Affirmed.

SMITH, C. J., and BLISS, WENNERSTRUM and LARSON, JJ., concur.

HAYS, MULRONEY and THOMPSON, JJ., dissent.

OLIVER, J., takes no part.

HAYS, J. (dissenting)—I am unable to agree with the majority opinion and respectfully dissent.

The single issue presented by this appeal is the construction to be placed upon the first of the two clauses in the contract, quoted in the majority opinion, as all are agreed that no recovery may be had under the second clause thereof.

The primary rule of construction is to give effect to the intention of the parties and to avoid unfair and unreasonable results where possible. Darnall v. Day, 240 Iowa 665, 37 N.W.2d 277. In my judgment the majority opinion has failed to ascertain the intention of the parties and has reached an unfair and unreasonable result.

In ascertaining the intention, while each contract must be construed according to its own terms, and, if possible, effect be given to all the language used therein, the courts hold it to be important for them to consider not only the language employed but the circumstances surrounding the parties and the object in view which induced the making of it. Annotation 175 A. L. R. 8, 29, and authorities cited therein. Applying this formula to the instant case: We have a corporation and a copartnership dealing at arm's length. The Railway Company has by virtue of its business certain well-defined and well-recognized duties to the public. By granting to the copartnership a right to use part of its facilities, that duty might be breached or enlarged because thereof. By the contract the Railway Company is seeking to protect itself from every and all possible damage that might

arise against it on account of this new use. By no reasonable hypothesis am I able to find anything in the contract other than a desire to protect the Railway Company from acts of the other party to the contract, over which it has no control.

It is conceded in the majority opinion that the claim for which recovery is sought is based upon voluntary and gratuitous expenditures made for the injured party, Stewart. To say that the Railway Company sought to protect itself against its own voluntary and gratuitous expenditures, and that is the effect of the holding in the majority opinion, is, to say the least, highly illogical. While it is true that parties may contract as they please so long as not against public policy, it is certainly contrary to experience and against reason that the copartnership should agree to assume and pay for the gratuitous acts of the Railway Company. It would make it an insurer, or impose a liability upon it, the extent of which would be uncertain, indefinite and entirely in the hands of the Railway Company.

Clause two of the contract, quoted by the majority opinion, is admitted to be one for indemnity. Clause one thereof is said to be more comprehensive than the second and constitutes an absolute and unqualified promise to pay. The majority opinion quotes from State v. Cordaro, 214 Iowa 1070, 1075, 241 N.W. 448, 450, to the effect that a contract of indemnity is quite different than an absolute promise to pay. This may be true, and the same opinion goes on to say:

" 'The law recognizes a well-defined difference between covenants of indemnity against loss, and covenants to assume or pay a liability. In the former class [indemnity contracts] the covenant is not broken, and no right of action accrues, until a loss has been suffered against which the covenant runs, while in the latter class [assume and agree to pay] the covenant is broken, and a right of action accrues, whenever the liability is fixed and absolute.' "

Also cited in the majority opinion is Hipwell v. National Surety Co., 130 Iowa 656, 105 N.W. 318, quoting "in no plainer language could the contractor have agreed 'to promptly pay for all labor and materials used in and about the building.' " I do not take issue with the majority opinion as to its being an

absolute promise to pay, *but to pay what?* In every case cited in the majority opinion the thing for which recovery was sought was a legal claim. They are no basis for holding the instant contract covers gratuitous expenditures.

The majority opinion also states: "The agreement * * * seems to have been intended not merely for plaintiff's protection but also for the benefit of persons injured from use of the crossing. There is little doubt that Stewart, had he seen fit, could have recovered these expenses from defendants by virtue of the agreement", citing rule 3, R. C. P., which specifically deals with public bonds, and rule 2, R. C. P., which allows one making a contract for the benefit of a third party to sue in his own name without joining the party for whose benefit the contract was made.

In my judgment this contract is not such a contract for the benefit of a third party as would allow such third party to sue thereon. 17 C. J. S., Contracts, section 519(2)b, page 1127, says: "Beneficiaries of contracts to which they are not parties have been divided into donee beneficiaries, creditor beneficiaries, and incidental beneficiaries, it being held that only those falling within the first two classes may enforce contracts for their benefit." To the same effect see Restatement, Contracts, section 147; In re Estate of Walker, 234 Iowa 1126, 15 N.W.2d 260. If the instant contract be for the benefit of a third party it must be under the third class above-stated, i.e., incidental beneficiary, as no one is expressly named therein. It is not a public bond hence rule 3, R. C. P., has no application. If rule 2, R. C. P., has any application it must be upon the theory that the contract was for the third party exclusively, which of course it is not. Brill v. Brill, 282 Pa. 276, 280, 127 A. 840, 842, announces what appears to me to be an excellent statement of the test as to the third person's rights under the contract. It is: "whether the promise is made primarily for the benefit of the other party to the contract * * *, that is to say, whether the payment is in relief of the promisee and the fact that the money is to be paid to the third person is merely a matter of arrangement or convenience for the other party to the contract, or whether the primary purpose and object of the promise are to benefit the

third person." Clearly, any benefits that accrue to the third party under the instant contract are merely incidental, the object being to protect the promisee thereof.

The majority opinion further states that if the only purpose of the quoted paragraph of the contract was to provide for indemnity (legal liability) the language in the first clause thereof is useless surplusage. I do not agree. Assuming that it goes further than a mere indemnity and is not merely an elaboration thereof, I think it gives to the Railway Company a benefit which it would not have under a strict indemnity contract. Rule 28, R. C. P., provides:

"An action heretofore cognizable only after another has been prosecuted to conclusion may be joined with the latter; and the court shall grant relief according to the substantive rights of the parties. *But there shall be no joinder of an action against an indemnitor or insurer with one against the indemnified party, unless a statute so provides.*" (Italics added.)

Construing the contract in this light gives effect to both clauses and reaches a reasonable result.

I would hold that the parties contemplated only legal liability being covered by the contract; that by agreeing to assume and pay, the copartnership agreed to become a party to any suit against the Railway Company without requiring that a judgment be first obtained, as is the case under Clause two. I would reverse the judgment of the trial court.

MULRONEY and THOMPSON, JJ., join in this dissent.